923 F.2d 782
 30 Wage & Hour Cas. (BN 209, 59 USLW 2451,
118 Lab.Cas. P 35,454, 24 Collier Bankr.Cas.2d 822,
21 Bankr.Ct.Dec. 454, Bankr. L. Rep. P 73,781
 C. James EDDLEMAN also known as Jim Eddleman; Jane B.
Eddleman, d/b/a J & J Cattle Company, Inc. and
Blue Fin Transport, Plaintiffs-Appellees,
v.
UNITED STATES DEPARTMENT OF LABOR, Defendant-Appellant.
 No. 88-2793.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 15, 1991.
 
 Jeffrey A. Clair, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., William Kanter, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., and Michael J. Norton, U.S. Atty., D. Colo., Denver, Colo., with him on the briefs), for defendant-appellant.
 Matthew D. Skeen (Christopher E. Bench, with him on the brief) of Skeen & Pearlman, P.C., Denver, Colo., for plaintiffs-appellees.
 Before McKAY, BARRETT, and ANDERSON, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This appeal arises from an attempt by the appellant, United States Department of Labor ("DOL"), to maintain an administrative action against a chapter 11 debtor. The United States Bankruptcy Court for the District of Colorado ruled that DOL's action was stayed by the automatic stay provision of the Bankruptcy Code, and the district court affirmed. We reverse.
 
 I. Facts
 
 2
 Appellees James and Jane Eddleman owned a mail-hauling business. They did most of their work under a contract with the United States Postal Service. On August 6, 1986, the Eddlemans filed a petition for relief under chapter 11 of the Bankruptcy Code. See generally 11 U.S.C. Secs. 1101-1174 (1988). They continued to operate the business as debtors-in-possession.
 
 
 3
 On May 27, 1987, DOL filed an administrative action against the Eddlemans, alleging pre-petition violations of the Service Contract Act ("SCA"), 41 U.S.C. Secs. 351-358 (1988). The SCA requires all federal government contractors to pay certain minimum wages and fringe benefits. See 41 U.S.C. Sec. 351. DOL alleges that the Eddlemans underpaid workers and failed to keep adequate records of hours worked and wages paid.
 
 
 4
 As part of the administrative enforcement action, DOL sought to liquidate claims for back wages due the Eddlemans' employees.[1] DOL also sought to include the Eddlemans on an official list of SCA violators. Persons on the list are debarred from contracting with the government for three years. 41 U.S.C. Sec. 354. If debarred under section 354, the Eddlemans stood to lose the benefit of renewal options included in their contract.
 
 
 5
 The Eddlemans responded by filing this adversary proceeding in bankruptcy court, requesting the court to enforce the automatic stay provision of the Bankruptcy Code against the DOL's administrative action. See 11 U.S.C. Sec. 362 (1988).[2] The Eddlemans sought, and were granted, a "Preliminary Injunction to Enjoin Violation of Automatic Stay." The Eddlemans also sought damages under 11 U.S.C. Sec. 362(h) (1988) for DOL's alleged willful violation of the automatic stay.
 
 
 6
 DOL moved to dismiss, arguing that its administrative action was taken to "enforce [its] police or regulatory power," and was therefore specifically exempted from the automatic stay provisions by 11 U.S.C. Sec. 362(b)(4) (1988). The bankruptcy court denied the motion to dismiss, holding that the DOL action was not within the "police or regulatory power" exemption, and that any continuation of DOL's enforcement effort was stayed. The district court affirmed the bankruptcy court's denial of the motion to dismiss and remanded the case to the bankruptcy court for further proceedings on the issue of damages. From that order, DOL appeals to this circuit.
 
 
 7
 As a preliminary matter, we must decide whether appellate jurisdiction exists for this appeal. Later, we consider whether the "police or regulatory power" exemption applies to DOL's enforcement proceeding.
 
 II. Jurisdiction
 
 8
 The jurisdiction of this court over appeals from district courts acting in their bankruptcy appellate capacity is limited to "final decisions, judgments, orders, and decrees." 28 U.S.C. Sec. 158(d) (1988); In re Kaiser Steel, 911 F.2d 380, 385-86 (10th Cir.1990). The Eddlemans argue that this court lacks jurisdiction to hear this appeal because the district court's order affirming the bankruptcy court and remanding for further proceedings is not "final" within the meaning of section 158(d). DOL counters that the district court's order is final because it settles the question of whether the automatic stay applies to DOL's enforcement proceeding. DOL argues that, without the opportunity to appeal now, it would be effectively denied meaningful appellate review on the automatic stay issue. Alternatively, DOL argues that the lower court order, applying the automatic stay to the DOL proceeding, operates as an injunction over which this court has appellate jurisdiction under 28 U.S.C. Sec. 1292(a)(1).[3]
 
 
 9
 DOL's argument that jurisdiction lies under section 1292 has been foreclosed by this court's recent decision in Kaiser Steel. In that case we held that section 158(d) is the exclusive basis of circuit court jurisdiction over appeals from orders of district courts acting in their bankruptcy appellate capacity. Section 1292 is therefore unavailable as a basis for appellate jurisdiction. 911 F.2d at 386.
 
 
 10
 We nonetheless hold that the district court order affirming the bankruptcy court's application of the automatic stay to DOL's enforcement proceeding is a final order appealable to this court under section 158(d).
 
 A.
 
 11
 The circuit courts consistently hold that orders granting or denying relief from the automatic stay are appealable final orders.[4] See, e.g., In re Dixie Broadcasting, Inc., 871 F.2d 1023, 1026 (11th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); In re West Elecs., Inc., 852 F.2d 79, 81-82 (3d Cir.1988); In re Sun Valley Foods Co., 801 F.2d 186, 190 (6th Cir.1986); In re Kemble, 776 F.2d 802, 805 (9th Cir.1985); In re Boomgarden, 780 F.2d 657, 659-60 (7th Cir.1985); Grundy Nat'l Bank v. Tandem Mining Corp., 754 F.2d 1436, 1439 (4th Cir.1985); In re Leimer, 724 F.2d 744, 745 (8th Cir.1984); In re Taddeo, 685 F.2d 24, 26 n. 4 (2d Cir.1982). While this court has not heretofore specifically addressed the issue of appealability, it has treated orders granting or denying relief from the automatic stay as appealable final orders. See In re Thompson, 894 F.2d 1227 (10th Cir.1990) (affirming district court affirmance of bankruptcy court denial of relief from stay); Pursifull v. Eakin, 814 F.2d 1501 (10th Cir.1987) (affirming district court order lifting stay). Likewise, the United States Supreme Court has ruled on the merits of circuit court decisions granting or denying relief from stay without questioning appellate jurisdiction. See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (reversing Eighth Circuit opinion which had reversed district court order granting relief from stay); United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (affirming Fifth Circuit opinion which had reversed district court order granting relief from stay).
 
 
 12
 The legislative history of the Bankruptcy Code shows that Congress views the imposition of the automatic stay to be analogous to a permanent injunction. The House Report states:
 
 
 13
 Because the stay is essentially an injunction, the three stages of the stay may be analogized to the three stages of an injunction. The filing of the petition which gives rise to the automatic stay is similar to a temporary restraining order. The preliminary hearing is similar to the hearing on a preliminary injunction, and the final hearing and order is similar to a permanent injunction.
 
 
 14
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 344, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6300. Because a permanent injunction is appealable as a final order, Vicksburg v. Henson, 231 U.S. 259, 266-67, 34 S.Ct. 95, 97-98, 58 L.Ed. 209 (1913), we may infer that Congress intended the grant or denial of stay to be similarly appealable. Leimer, 724 F.2d at 746; Taddeo, 685 F.2d at 26 n. 4.
 
 
 15
 Additional evidence of Congress' intent to expedite adjudication of claims relating to the automatic stay is found in 11 U.S.C. Sec. 362(e), (f) (1988), which provide for speedy hearings and ex parte proceedings to resolve requests for relief from stay. Immediate appeal from district court orders granting or denying relief from the automatic stay is necessary to effectuate Congress' intent to settle these matters quickly. Kemble, 776 F.2d at 805; In re American Mariner Indus., Inc., 734 F.2d 426, 429 (9th Cir.1984).
 
 
 16
 Our belief that this is the correct rule is reinforced when we consider the results of a contrary ruling. If we designate orders granting or denying relief from stay to be interlocutory orders, we render them virtually unreviewable by the circuit courts. This is so because the stay remains in effect only during the pendency of the bankruptcy proceedings. 11 U.S.C. Sec. 362(c) (1988). Therefore, in most cases, by the time the bankruptcy case is complete the issue of the stay will be moot.[5] It is inconceivable to us that Congress intended to insulate such orders from review above the district court level.
 
 
 17
 We recognize that all the cases cited above arose from petitions for relief from stay brought by creditors under section 362(d). This case differs because the DOL was not a creditor moving for relief from stay. Instead, the DOL, believing that its administrative action was exempt from the stay under section 362(b), properly initiated its administrative action without first seeking relief under section 362(d). See NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934, 940 (6th Cir.1986) (governmental unit which determines that its police power or regulatory proceeding is excepted from automatic stay is not required to petition bankruptcy court for relief from stay prior to continuing its proceeding). It was the debtor in this case who obtained an order enforcing the stay against DOL.
 
 
 18
 But the effect of the order on DOL is the same as if DOL had been denied relief from the stay: DOL is precluded by section 362 from pursuing its legal rights and remedies during the pendency of the bankruptcy. In terms of finality, we see no reason to treat this order differently from an order denying relief from the stay. See United States v. Nicolet, 857 F.2d 202 (3d Cir.1988) (circuit court has jurisdiction to review district court order holding that stay is inapplicable to environmental cleanup action); Edward Cooper Painting, 804 F.2d at 939 (circuit court has jurisdiction to determine applicability of automatic stay to unfair labor practice proceeding). Rather, when the government is stayed from enforcing its police or regulatory power, prompt circuit review is particularly important.
 
 
 19
 It is clear from the legislative history that Congress intended to give government even greater protection from unfair application of the automatic stay than it gave to private creditors. In drafting the present Bankruptcy Code, Congress attempted to correct the problem of undue interference with governmental regulation by bankruptcy courts. See H.R. Rep. 95-595, 95th Cong., 2d Sess. 174, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6135. Congress deliberately excepted regulatory actions from the stay in order to force the courts to examine each case carefully, with a view to protecting important governmental interests. The legislative history states:
 
 
 20
 Under present law, there has been some overuse of the stay in the area of governmental regulation. For example, in one Texas bankruptcy court, the stay was applied to prevent the State of Maine from closing down one of the debtor's plants that was polluting a Maine river in violation of Maine's environmental protection laws. In a Montana case, the stay was applied to prevent Nevada from obtaining an injunction against a principal in a corporation who was acting in violation of Nevada's anti-fraud consumer protection laws. The bill excepts these kinds of actions from the automatic stay. The States[6] will be able to enforce their police and regulatory powers free from the automatic stay. The bankruptcy court has ample additional power to prevent damage to the bankrupt estate by such actions on a case-by-case basis. By exempting these State actions from the scope of the automatic stay, the court will be required to examine the State actions more carefully, and with a view to protecting the legitimate interests of the State as well as of the estate, before it may enjoin actions against the debtor or the estate.
 
 
 21
 Id. (footnotes omitted) (emphasis added). Considering the important governmental interests at stake, Congress could not have intended to shield such orders from circuit review by deeming them to be interlocutory orders, unreviewable under section 158(d).
 
 B.
 
 22
 Having determined that an order applying the automatic stay to a regulatory action is an appealable final order, we must now address the question of whether the remanded damages issues destroy finality in this case. In a recent decision, we stated:
 
 
 23
 The Tenth Circuit has interpreted "final order" for purposes of Sec. 158(d) in traditional finality terms ... rather than according to the more flexible standard adopted by other circuits for identifying "final orders" of bankruptcy judges. We have held that adhering to the more traditional view of finality for our review of district court orders, i.e. that "[t]o be final and appealable, the district court's order must end the litigation and leave nothing to be done except execute the judgment," ... furthers the policy underlying the finality doctrine by controlling piecemeal adjudication and eliminating delays caused by interlocutory appeals.
 
 
 24
 In re Magic Circle Energy Corp., 889 F.2d 950, 953 (10th Cir.1989) (citations omitted) (quoting In re Glover, Inc., 697 F.2d 907, 909 (10th Cir.1983)). Thus, we must look to traditional finality rules--and traditional exceptions to those rules--to determine whether the order in this case is final and appealable despite the remanded issues.[7]
 
 
 25
 In a similar case, the Third Circuit, applying traditional finality principles, held that it lacked jurisdiction to hear an appeal. In re Brown, 803 F.2d 120 (3d Cir.1986). In Brown, a chapter 7 debtor received a letter from her credit union explaining that unless she reaffirmed her credit union debt, the credit union would refuse to supply future services. The debtor filed a complaint with the bankruptcy court alleging that the letter violated the automatic stay. The bankruptcy court held that the credit union had violated the stay, but refused to award damages to the debtor because the violation was only technical. On appeal, the district court held that the violation was more than technical and remanded to the bankruptcy court to determine damages. The circuit court dismissed an appeal from the district court's order, stating: "[W]here a district court's order does not affect the distribution of the debtor's assets or the relationship among the creditors, the traditional finality requirements must generally be satisfied before the order is appealable." Id. at 123. Under Brown, the district court order in this case could not be appealable because it did not "end the litigation and leave nothing to be done except execute the judgment." Magic Circle, 889 F.2d at 953.
 
 
 26
 This case, however, is distinguishable from Brown. Brown involved a private creditor whose actions were within the scope of the stay. This case involves a government action which, DOL argues, Congress has excepted from the stay. While Congress intended private actions against the bankruptcy estate to be stayed automatically until the courts declare otherwise, see 11 U.S.C. Sec. 362(a), (c), (d), Congress intended that government regulatory actions never be subject to the stay. In this regard, governmental exemption from the stay is analogous to governmental immunity from suit. Therefore, an order applying the automatic stay to a government police or regulatory action is immediately appealable under the collateral order exception, as applied in Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
 
 
 27
 In Mitchell, the Supreme Court held that an order denying a claim of qualified immunity, "to the extent that it turns on an issue of law, is an appealable 'final decision' ... notwithstanding the absence of a final judgment." Id. at 530, 105 S.Ct. at 2817. The Court held that such an order fits within the collateral order exception to the finality rule, as set forth in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), for "claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id. at 546, 69 S.Ct. at 1225-26. The government's right to conduct its police and regulatory activities free from undue interference by bankruptcy courts is an important right which should be protected by prompt judicial review, as Congress intended. The rationale of Mitchell provides the means whereby prompt review of a "final decision" applying the stay to a police or regulatory action can be guaranteed, notwithstanding the absence of a final judgment.[8]
 
 
 28
 Mitchell explains that governmental immunity is an entitlement not to stand trial, and that this entitlement is forever lost if the order denying immunity is not reviewed until after the completion of a trial. 472 U.S. at 526, 105 S.Ct. at 2815. Thus, an order denying immunity meets the first prong of the Cohen test, which requires that the order is "effectively unreviewable on appeal from a final judgment." Id. at 527, 105 S.Ct. at 2816. Likewise, in this case the government claimed a right not to be stayed during the bankruptcy proceedings. Because of the remanded issues, however, that right has been irretrievably lost.
 
 
 29
 By the time DOL briefed this appeal, this proceeding had languished in the bankruptcy court for two years, with no attempt by that court to determine damages on remand. The bankruptcy court has, in the interim, approved a reorganization plan. During the entire pendency of the bankruptcy proceeding, the government was forced, by virtue of the automatic stay, to continue to contract with a violator of the SCA.[9] Such occurrences are unpreventable unless circuit courts immediately review orders imposing the stay on police or regulatory actions. The potential exists that a bankruptcy court could prevent the government from stopping polluters or other persons threatening the public welfare, or even from pursuing civil enforcement actions against drug dealers, simply by inaction on remanded issues.[10]
 
 
 30
 The second Cohen prong, that the order "conclusively determine the disputed question," was satisfied in Mitchell, because
 
 
 31
 there will be nothing in the subsequent course of the proceedings ... that can alter the court's conclusion that the defendant is not immune.... [T]he court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to stand trial on the plaintiff's allegations, and ... "[t]here are simply no further steps that can be taken ... to avoid the trial the defendant maintains is barred."
 
 
 32
 472 U.S. at 527, 105 S.Ct. at 2816 (quoting Abney v. United States, 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977)) (emphasis in original). Similarly, in this case the bankruptcy court decided as a matter of law that the DOL's action is within the scope of the stay. That issue will not be revisited on remand. The DOL could do nothing further in the bankruptcy court or the district court to avoid the stay.
 
 
 33
 The final prong of Cohen requires that "the question must involve a claim of right separable from, and collateral to, rights asserted in the action." Id. at 527, 105 S.Ct. at 2816. This prong is the most troublesome, both in Mitchell and in this case, because claims of immunity or of exemption from the stay are decided on many of the same facts as are the merits of the underlying actions. In Mitchell, the government actor was immune from suit if his actions did not violate "clearly established law." Id. at 530, 105 S.Ct. at 2817. Thus, the court would examine the purported violations in order to decide the immunity question, then examine those same violations again to decide the merits of the underlying action. Similarly, in this case, the bankruptcy court determined that the actions of DOL fell within the scope of the stay. The bankruptcy court will then re-examine those actions on remand to see if they constitute a willful violation of the stay. It is difficult, in either case, to establish separability.
 
 
 34
 The Supreme Court, however, held that the order in Mitchell was sufficiently separable to satisfy Cohen. The Court reasoned:
 
 
 35
 [I]t follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct that a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated.... All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged action.... To be sure, the resolution of these legal issues will entail consideration of the factual allegations that make up the plaintiff's claim for relief; the same is true, however, when a court must consider whether a prosecution is barred by a claim of former jeopardy or whether a Congressman is absolutely immune from suit because the complained of conduct falls within the protections of the Speech and Debate Clause.... In holding these and similar issues of absolute immunity to be appealable under the collateral order doctrine, the Court has recognized that a question of immunity is separate from the merits of the underlying action for purposes of the Cohen test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue.
 
 
 36
 Id. at 527-29, 105 S.Ct. at 2816-17 (footnotes and citations omitted). The question of law decided in this case, that the DOL action is within the scope of the stay, is also conceptually distinct from the question of whether the stay was willful.
 
 
 37
 We conclude that an order applying the automatic stay to a governmental action which is arguably taken to enforce the government's police or regulatory power is an appealable collateral order under the Cohen doctrine, as applied in Mitchell. This court, therefore, has jurisdiction to hear this appeal. We now address the merits of DOL's challenge.
 
 III. Exemption from Automatic Stay
 
 38
 DOL appeals the ruling of the bankruptcy court, affirmed by the district court, that its administrative action to enforce the provisions of the SCA is stayed by section 362(a) of the Bankruptcy Code. We review this question of law de novo, giving no special weight to the district court's determination. In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1266 (10th Cir.1988); Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir.1988).
 
 
 39
 Under the automatic stay provision, a petition filed in bankruptcy "operates as a stay, applicable to all entities of--(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case...." 11 U.S.C. Sec. 362(a). However, "[t]he filing of a petition ... does not operate as a stay--.... (4) ... of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power...." 11 U.S.C. Sec. 362(b).
 
 
 40
 The bankruptcy court held that DOL's enforcement proceedings were not within the 362(b)(4) exception. The district court affirmed noting that "section 362(b)(4) was intended to except only proceedings ... that are attempting to prevent or stop violations of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws." Order, Sept. 13, 1988, at 7. The court reasoned that DOL was not attempting to prevent any of the foregoing or similar acts. Id. The court further reasoned that "regulatory laws that conflict directly with control of the res or property by the Bankruptcy Court are not excepted by Sec. 362(b)(4)." Id.
 
 
 41
 At the outset, we reject the district court's conclusion that the 362(b)(4) exception does not apply to government actions that conflict with the bankruptcy court's control over assets of the debtor. The language of section 362(b)(4) contains no such limitations. Under the plain language of the statute, governmental action must simply be taken for the purpose of exercising "police or regulatory" power in order to qualify for the exemption. Furthermore, the statute specifically allows the government to enforce any judgments obtained in the exercise of its police or regulatory powers, with the exception of money judgments. 11 U.S.C. Sec. 362(b)(5).[11] We must assume that Congress chose its language with the full recognition that the exception would allow governmental actions to encroach on the court's control of debtors' affairs. Accordingly, we conclude that the section 362(b)(4) exception can apply to agency actions, even though such actions may affect debtor assets.
 
 
 42
 We now consider whether the section 362(b)(4) exception applies to the DOL proceedings involved in this case. Most courts that have faced this issue have determined that the exception applies.[12] Of course, not every agency action against a debtor can be characterized as one that enforces "police or regulatory power." Consequently, courts have developed two tests for determining whether agency actions fit within the exception. Under the "pecuniary purpose" test, the court asks whether the government's proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and not to matters of public policy. See Edward Cooper Painting, 804 F.2d at 942; In re State of Missouri, 647 F.2d 768, 776 (8th Cir.1981), cert. denied, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). If it is evident that a governmental action is primarily for the purpose of protecting a pecuniary interest, then the action should not be excepted from the stay. In contrast, the "public policy" test distinguishes between government proceedings aimed at effectuating public policy and those aimed at adjudicating private rights. See Edward Cooper Painting, 804 F.2d at 942. Under this second test, actions taken for the purpose of advancing private rights are not excepted from the stay. See id.
 
 
 43
 In the case at bar, we conclude that DOL's enforcement proceedings are exempt from the stay under either test. The remedies sought by DOL are not designed to advance the government's pecuniary interest. DOL's pursuit of debarment and liquidation of back-pay claims was primarily to prevent unfair competition in the market by companies who pay substandard wages. Although we do not feel bound to apply it, we also conclude that the "public policy" test presents no barrier to DOL's actions. Despite the fact that DOL sought liquidation of back-pay claims for specific individuals, we do not characterize the use of that remedy as an assertion of private rights. We conclude instead that the request for liquidation of back-pay claims was but another method of enforcing the policies underlying the SCA. Our conclusion is bolstered by the fact that the back-pay claimants would not receive any extra priority by virtue of the DOL action. Actual collection of the back-pay claims must proceed according to normal bankruptcy procedures. Accordingly, we hold that DOL's enforcement proceedings in this case were exempt from the automatic stay under section 362(b)(4).
 
 IV. Conclusion
 
 44
 We hold that appellate jurisdiction exists for this appeal because the district court's order must be considered a final decision under 28 U.S.C. Sec. 158(d). On the merits of DOL's challenge, we hold that the enforcement action at issue was exempt from the automatic stay under 11 U.S.C. Sec. 362(b)(4). Accordingly, we REVERSE the holding of the district court and REMAND with instructions to dissolve the stay against DOL.
 
 
 
 [1]
 DOL concedes that, after the wage claims are liquidated in an administrative proceeding, those wage claims must be treated as claims against the estate, and any actual collection of back wages must proceed in accordance with the provisions of the Bankruptcy Code
 
 
 [2]
 The applicable portions of the automatic stay provision, 11 U.S.C. Sec. 362, state:
 (a) Except as provided in subsection (b) of this section, a [bankruptcy] petition ... operates as a stay, applicable to all entities, of--
 (1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title....
 (b) The filing of a [bankruptcy] petition ... does not operate as a stay--
 (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power....
 
 
 [3]
 "[T]he courts of appeals shall have jurisdiction of appeals from:
 (1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions ...;"
 28 U.S.C. Sec. 1292(a)(1) (1988).
 
 
 [4]
 Prior to 1984, appellate jurisdiction in bankruptcy was governed by 28 U.S.C. Sec. 1293(b). Because sections 158(d) and 1293(b) are virtually identical, we apply decisions made under section 1293(b) in this case. See In re Commercial Contractors, 771 F.2d 1373, 1374 n. 1 (10th Cir.1985) (courts accord same meaning to sections 1293(b) and 158(d)); In re Teleport Oil Co., 759 F.2d 1376, 1377 n. 1 (9th Cir.1985) (section 1293(b) decisions applicable in section 158 cases)
 
 
 [5]
 In this case, even though the reorganization plan has been approved and discharge has been granted, the question of whether the stay properly applies is not moot because of the remanded damages issues
 
 
 [6]
 Although the legislative history speaks of state action, the language of the statute clearly applies to federal governmental actions as well. Section 362(b)(4) excepts "an action or proceeding by a governmental unit" from the stay
 
 
 [7]
 Magic Circle's ostensible flat rejection of the flexible finality rule in bankruptcy is somewhat misleading. The flexible rule developed because, if "traditional" rules of finality applied in bankruptcy, no appeals would be heard in any bankruptcy matter until a final order issued as to the entire bankruptcy case. See In re County Management, 788 F.2d 311, 313 (5th Cir.1986) (rules differ in bankruptcy because case need not be appealed as single judicial unit at termination of whole proceeding); In re Saco Local Dev. Corp., 711 F.2d 441, 443 (1st Cir.1983) ("Traditionally, every civil action in a federal court has been viewed as a 'single judicial unit,' from which only one appeal would lie."). "Viewed realistically, a bankruptcy case is simply an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed." In re Martin Bros. Toolmakers, Inc., 796 F.2d 1435, 1437 (11th Cir.1986). Every circuit, including this one, recognizes explicitly or implicitly that "traditional" rules of finality must be adapted to allow appeals of separate disputes within the bankruptcy case, without waiting for the entire case to become final. See Commercial Contractors, 771 F.2d at 1375 (quoting In re Riggsby, 745 F.2d 1153, 1155 (7th Cir.1984)) (" '[A] single bankruptcy can give rise to numerous claims which are litigable to final judgments appealable while the bankruptcy proceeding is still going on....' "). See also In re Delta Services Indus., 782 F.2d 1267, 1269 (5th Cir.1986); In re Morse Elec. Co., Inc., 805 F.2d 262, 264 (7th Cir.1986); Martin Bros., 796 F.2d at 1437 (Eleventh Circuit opinion); In re Sun Valley Foods, 801 F.2d at 190 (Sixth Circuit opinion); American Colonial Broadcast Corp., 758 F.2d 794, 801 (1st Cir.1985); Sumy v. Schlossberg, 777 F.2d 921, 923 (4th Cir.1984); Leimer, 724 F.2d at 745 (Eighth Circuit opinion); In re Comer, 716 F.2d 168, 171-72 (3d Cir.1983); In re White, 727 F.2d 884, 885-86 (9th Cir.1984); 16 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3926 (Supp.1990). Thus, while Magic Circle purports to reject the flexible approach to finality in bankruptcy, this court, in fact, routinely adopts the flexible approach by treating discrete matters within a bankruptcy case as final orders which may be heard on appeal before the entire bankruptcy is finished. See, e.g., In re Electronic Metal Products, Inc., 916 F.2d 1502 (10th Cir.1990) (appealing order in adversary proceeding to recover preference); In re Gardner, 913 F.2d 1515 (10th Cir.1990) (appealing order in adversary proceeding to compel debtor to turn over property); Kaiser Steel Corp. v. Charles Schwab & Co., Inc., 913 F.2d 846 (10th Cir.1990) (adversary proceeding to recover fraudulent transfer); In re Brayshaw, 912 F.2d 1255, 1256 (10th Cir.1990) (holding that grant or denial of debtor's claim of property exemption is final, appealable order); In re Roberts, 906 F.2d 1440 (10th Cir.1990) (appealing order determining dischargeability of a debt); In re B & L Oil Co., 834 F.2d 156 (10th Cir.1987) (appealing order transferring venue of turnover proceeding)
 It is clear that, despite the "traditional" rule announced in Magic Circle, this court has not completely rejected the flexible rule. Rather, we have placed limits on its application. We are flexible in allowing appeals of discrete disputes within a bankruptcy case. We demand, however, that each discrete dispute come to this court in a posture which satisfies "traditional" finality principles. Interpreted in this way, Magic Circle may be reconciled with the other opinions of this court cited above. This interpretation is also consistent with the our opinion in In re O'Connor, 808 F.2d 1393 (10th Cir.1987). In O'Connor, the debtor moved for permission to use cash collateral. The bankruptcy court granted the motion and the district court reversed. This court entertained an appeal, stating:
 Appellee ... suggests we do not have jurisdiction because the order of the district court was not final as it "merely dispos[ed] of an incidental matter regarding proceedings of the Bankruptcy Court...." The argument is unfounded.... [G]iven the nature of bankruptcy proceedings and the appellate rights arising therefrom, an order of a district court reversing a bankruptcy court order is final unless the district court remands the case for "further significant proceedings."
 Id. at 1395 n. 1 (citations omitted). Accord County Management, 788 F.2d at 313 (quoting In re Emerald Oil Co., 694 F.2d 88, 89 (5th Cir.1982) (although appeal of discrete disputes is allowed in bankruptcy, "there must be a final determination of the rights of the parties to secure the relief they seek in this suit for an order to be considered final."); In re Charter Co., 778 F.2d 617, 621 (11th Cir.1985) (quoting Leimer, 724 F.2d at 745) ("Although courts 'take a more liberal view of what constitutes a separate dispute for purposes of appeal' in bankruptcy cases ... the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do.").
 
 
 [8]
 Circuit court review of such a "final decision" comports with the language of section 158(d). That section allows the circuit courts to hear appeals from "final decisions, judgments orders, and decrees." 28 U.S.C. Sec. 158(d) (emphasis added). Compare this provision to section 158(a), which allows the district courts to hear appeals only from "final judgments, orders and decrees." Although the bankruptcy court's application of the stay in this case may not amount to a final judgment, order or decree, we conclude that it does constitute a final decision under section 158(d)
 
 
 [9]
 The government contract was the most valuable asset of the bankruptcy estate. Apparently, reorganization was possible only if the government contract continued in force. Because the damages issues "do[ ] not affect the distribution of the debtor's assets or the relationship among the creditors," Brown, 803 F.2d at 123, the bankruptcy court has no incentive to settle the remanded issues quickly. On the contrary, the temptation exists to delay as long as possible in order to keep the government contract within the estate
 
 
 [10]
 Significantly, Congress intended, when it drafted the Bankruptcy Code, to prevent the bankruptcy court from maintaining the stay by inaction. The legislative history states:
 Creditors may obtain relief from the stay if their interests would be harmed by continuance of the stay. The bill ... provides that unless the court acts quickly, the relief is automatic on request by a creditor. Too often today, court delay in handling requests for relief amounts to a complete denial of relief. The court can thus avoid the issue, and yet rule in the debtor's favor.
 H.R.Rep. 95-595, 95th Cong., 2d Sess. 175, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6136 (footnotes omitted).
 
 
 [11]
 DOL was not seeking to enforce a money judgment in its administrative action. Instead, it sought liquidation of the damage claims, so that proofs of claim could be filed on behalf of the Eddlemans' employees
 
 
 [12]
 See, e.g., Pension Ben. Guar. Corp. v. LTV Corp., 875 F.2d 1008, 1020 (2d Cir.1989) (action to enforce ERISA within exception), rev'd on other grounds, --- U.S. ----, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); NLRB v. Twin Cities Elec. & Eng'g, Inc., 907 F.2d 108 (9th Cir.1990) (NLRB enforcement proceedings not stayed); Brock v. Rusco Indus., Inc., 842 F.2d 270, 273 (11th Cir.) (Secretary's action to enforce Fair Labor Standards Act not subject to automatic stay), cert. denied, 488 U.S. 889, 109 S.Ct. 221, 102 L.Ed.2d 212 (1988); EEOC v. McClean Trucking Co., 834 F.2d 398 (4th Cir.1987) (action under Age Discrimination in Employment Act and Title VII exempt from stay); Edward Cooper Painting, 804 F.2d at 934 (enforcement proceedings based on unfair labor practice exempt from stay); EEOC v. Rath Packing Co., 787 F.2d 318 (8th Cir.) (EEOC action seeking injunctive relief and back pay not subject to stay as action was for purpose of protecting public policy), cert. denied, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986); Ahrens Aircraft, Inc. v. NLRB, 703 F.2d 23 (1st Cir.1983) (enforcement proceeding seeking back-pay exempt from automatic stay); NLRB v. Evans Plumbing Co., 639 F.2d 291 (5th Cir.1981) (proceeding based on unfair labor practice seeking reinstatement with back-pay not subject to stay)