### In re TASCOSA PETROLEUM CORPORATION, Debtor.

### EFL LIMITED, Appellant,

v.

### MIRAMAR RESOURCES, INC., Thomas J. Axon, Richard B. Alexander, Duane H. Bruch, Ralph J. Miele, Charles Lineberry, Gerard N. Cudzil, Patrick W. Magarelli, Robert J. Brietz and Rockwell Drilling Company, Appellees.

### Civil Action No. 95–1079–MLB.

United States District Court, D. Kansas.

May 7, 1996.

David C. Adams, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, Craig R. Carver, Margaret B. Graham, Denver, CO, for EFL Limited.

Christopher J. Redmond, Husch & Eppenberger, Kansas City, MO, for Rockwell Drilling Company.

Christopher J. Redmond, Redmond & Nazar, L.L.P., Wichita, KS, Peter J. Lucas, Doherty, Rumble & Butler, Denver, CO, for Miramar Resources, Inc., Thomas J. Axon, Phillip Vassallo, Richard B. Alexander, Duane H. Bruch, Ralph J. Miele, Charles Lineberry, Gerad Cudzil, Patrick Magarelli, Robert J. Brietz, Liquidator Rockwell Drilling Company.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on EFL Limited's appeal from the bankruptcy court's January 11, 1995 order. After reviewing the parties' briefs and the appealed order, the court affirms.

### Background

Tascosa filed for Chapter 11 bankruptcy in 1993. EFL Limited ("EFL") is an investment banking firm which financed two joint ventures and limited partnerships involved in Tascosa's bankruptcy proceedings: the Kismet Oil and Gas Joint Venture and the Kismet Oil and Gas Limited Partnership (referred to collectively as "Kismet").

Kismet was formed to receive capital contributions. Tascosa, the managing general partner and joint venturer of Kismet, would then invest these funds in oil and gas exploration and production. EFL financed several of the individuals providing capital to Kismet. In return, these individuals gave EFL promissory notes and security interests in their joint venture and partnership interests in Kismet. In connection with and as a condition precedent to the loans made to the investors, Kismet, Tascosa and EFL entered into an agreement ("inducement agreement") which described the parties' contractual rights regarding the venture.[1]

In 1992, EFL sued Tascosa and Kismet for breach of the inducement agreement in Colorado state court. EFL's action against Tascosa was stayed after Tascosa filed bankruptcy, but the case proceeded against Kismet. After a bench trial, the Colorado state court found that Kismet breached its inducement agreement with EFL and awarded EFL $481,297.28, plus interest, on May 12, 1994. EFL also sued the individual investors for defaulting on their payments, apparently in their home states. (Bankr. doc. 86 at 2). There was no evidence before the bankruptcy court that EFL proceeded to judgment against the defaulting investors or foreclosed on the investors' interests in Kismet.

In the bankruptcy proceedings, appellees Miramar Resources, Inc., Thomas J. Axon, Phillip Vassallo, Richard B. Alexander, Duane H. Bruch, Ralph J. Miele, Charles Lineberry, Gerard N. Cudzil, Patrick W. Magarelli, and Robert J. Brietz ("plan proponents") filed a proposed plan of liquidation and accompanying disclosure statement. The plan provided, in part, that Rockwell Drilling Company ("Rockwell") would act as a liquidator and take Tascosa's place as the managing joint venturer and general partner of Kismet. As such, Rockwell would assume Kismet's underlying corporate agreements, called the Kismet Oil and Gas Joint Venture Agreement and the Kismet Oil and Gas Limited Partnership Agreement. These documents provided for the creation, purpose and management of Kismet. (See Doc. 3, Exs. A, B).

The proposed plan also allowed Rockwell to pursue any causes of action on behalf of Kismet which would result in the largest recovery for class 4(a) and (b) creditors of the plan. Class 4(a) of the plan classified the interests of Kismet's joint ventures; class 4(b) classified the interests of Kismet's limited partners. EFL was not a class 4(a) or 4(b) creditor but rather a class 5 creditor. Class 5 contained unsecured creditors of Kismet.[2]

The bankruptcy judge issued an order scheduling a hearing to consider approval of the disclosure statement for February 23, 1994. If the disclosure statement was approved, the confirmation hearing would begin immediately thereafter. (Bankr. doc. 36 at 2). The bankruptcy court ordered acceptances or rejections of the plan due February 16, 1994, before the hearing on approval of the disclosure statement. Objections to the plan were due the same day. (Bankr. doc. 36 at 2). EFL timely filed objections to the plan.

At the February 23 hearing, the bankruptcy court approved the disclosure statement. It then proceeded to hear objections to the

---

1. The purchase agreement is not included in the record.

2. The bankruptcy court specifically found that EFL was neither a joint venturer nor a limited partner in Kismet but was an unsecured creditor of Kismet. EFL does not appeal this ruling.

plan itself. EFL objected to the proposed plan on the following grounds: (1) Kismet's underlying corporate agreements, the Kismet Oil and Gas Joint Venture Agreement and the Kismet Oil and Gas Limited Partnership Agreement, were not executory contracts and therefore could not be assumed by Rockwell under 11 U.S.C. § 365 of the bankruptcy code; (2) Rockwell could not serve as the liquidator without the consent of the Kismet partners; (3) Kismet's partnership assets were not the assets of Tascosa and thus not subject to the bankruptcy court's jurisdiction; (4) Rockwell was self-interested and therefore could not act as liquidator; (5) the plan did not provide for the curing of defaults upon Rockwell's assumption of the Kismet partnership agreements; (6) the plan proponents failed to follow acceptable procedures for proposing and soliciting votes for the disclosure statement and plan of reorganization; and (7) the plan and the disclosure statement failed to adequately inform Kismet partners what would happen to Kismet after Rockwell assumed Tascosa's place as the managing joint venturer and general partner of Kismet.[3] The bankruptcy court held this last objection moot in light of its previous approval of the disclosure statement. (Bankr. doc. 60 at 17).

At the hearing, the bankruptcy court considered and overruled two of EFL's objections: One, that the procedure of requiring completed ballots before the bankruptcy court approved the disclosure statement was improper, (Bankr. doc. 60 at 14, 27); and two, that Rockwell was self-interested and could not act as liquidator. (Bankr. doc. 60 at 24–26). The bankruptcy court sustained EFL's objection that the court did not have jurisdiction over the partnership assets. (Bankr. doc. 60 at 23–24).

The bankruptcy court set aside several of EFL's objections as contested matters[4] to be resolved a later hearing. These were: that Kismet's underlying corporate agreements were not executory contracts and therefore could not be assumed by Rockwell, (Bankr. doc. 60 at 22–23), that the plan did not provide for the curing of defaults upon Rockwell's assumption of the Kismet partnership agreements, (Bankr. doc. 60 at 26), and that Rockwell could not serve as the liquidator without the consent of the Kismet partners, (Bankr. doc. 60 at 21–23). After the bankruptcy court set aside these issues as contested matters, it orally confirmed the plan. (Bankr. doc. 60 at 68–69).

The bankruptcy court filed a written order approving the disclosure statement on February 25, 1994, (Bankr. doc. 55), and an order confirming the plan on March 11, 1994. (Bankr. doc. 61). A briefing schedule was established for the contested matters, and after considering the briefs, the bankruptcy court made its rulings in a written order issued January 11, 1995. (Bankr. doc. 93). Therein, the bankruptcy court held EFL lacked standing to make its remaining objections to the plan. Because the bankruptcy court found EFL lacked standing, it did not consider the merits of EFL's objections.

### Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 158(a) to hear EFL's appeal of the bankruptcy court's January 11, 1995 order. The bankruptcy court issued its order finding EFL lacked standing to object to the plan confirmation on January 11, 1995. On January 23, EFL moved for an extension of time to file a notice of appeal, see Bankruptcy Rule 8002(c), which was granted by the bankruptcy court on February 1, 1995. On Feb-

3. Although EFL stated in its objection to the proposed plan of liquidation that neither the plan nor the disclosure statement adequately informed the Kismet partners, EFL had no objection to the disclosure statement itself. (Doc. 60 at 14) (Mr. Adams speaking for EFL).

4. Disputes litigated in the bankruptcy court are divided into adversary proceedings and contested matters. The Federal Rules of Bankruptcy Procedure lists ten types of disputes which are to be resolved in adversary proceedings. See Fed.

R.Bank.P. 7001. Adversary proceedings are governed by more formal rules of procedure than contested matters and must be instituted by the filing of a complaint. See In re Indian Palms Assoc., Ltd., 61 F.3d 197, 204 (3rd Cir.1995).

Contested matters are those issues for which Rule 7001 does not require an adversary proceeding, see Fed.R.Bank.P. 9014, and are generally designed for the resolution of simple issues, often on an expedited basis. See Matter of Zale, 62 F.3d 746, 762–63 (5th Cir.1995).

ruary 10, 1995, EFL timely filed its notice of appeal of the January 11, 1995 order.

There is an issue in this case whether EFL timely filed its appeal of rulings made at the plan's confirmation February 23, 1994. This issue is discussed in section III.

## Discussion

EFL appeals several aspects of the bankruptcy proceedings and orders. **First,** EFL appeals the January 11, 1995 order that EFL did not have standing to object to the plan. **Second,** EFL appeals the rulings made when the bankruptcy court orally confirmed the proposed plan on February 23, 1994, (Bankr. doc. 56); specifically, the overruling of EFL's objections to the ballot procedure and Rockwell's eligibility to act as liquidator. **Third,** EFL asks the court to consider the merits of EFL's objections set aside as contested matters, which the bankruptcy court did not consider because it found EFL did not have standing to object.

 This court reviews the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *In re Grynberg,* 986 F.2d 367, 369 (10th Cir.1993), *cert. denied, Grynberg v. United States,* — U.S. ——, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993). Mixed questions of law and fact are subject to de novo review if they involve primarily a consideration of legal principles. *In re KAR Dev. Assoc. L.P.,* 180 B.R. 629, 633 (D.Kan. 1995).

## I. *Preliminary Matters*

Before turning to the merits of EFL's appeal, the court must address certain preliminary matters.

### A. *Discrepancy in Record*

At the February 23, 1994 hearing, ballots for and against the plan were counted. The transcript of the proceedings, (Bankr. doc. 60 at 16–17), the certification of voting filed February 24, 1995, (Bankr. doc. 53 at 1–2), and the order confirming the plan of liquidation filed March 11, 1994, (Bankr. doc. 61 at 2), all show that the class 4(a) creditors rejected the plan, that the 4(b) creditors accepted the plan, and that the class 5 credi-

tors accepted the plan. However, the bankruptcy court's January 11, 1995 order and appellees' response brief state that the class 4(a) creditors *approved* the plan. (Bankr. doc. 93 at 9, Doc. 4 at 3).

The court believes this discrepancy was caused by EFL's attempt to record votes as both a class 4 creditor and as a class 5 creditor, and the bankruptcy court's ruling during the February 23 hearing that EFL could not vote in both classes. (*See* Letters of February 22 and 23, 1994, from Karl Swartz to Christopher Redmond; Transcript of February 23, 1994 proceeding, Bankr. doc. 60 at 19). After combing the record, it remains unclear to this court how the votes were ultimately allocated and counted.

The court finds nonetheless that the issues on appeal are not affected. EFL does not challenge the bankruptcy court's statement in its January 11, 1995 order—the order from which EFL now appeals—that "[t]he joint venturers and limited partners of the Kismet entities, the members of class 4(a) and 4(b), did not object to the plan." The court will accordingly accept the statement as fact. In any event, whether the class 4(a) creditors accepted or rejected the plan does not change the legal findings as to EFL's standing to object, which is addressed below.

### B. *Other Voting Allocation Issues*

Although EFL does not question the bankruptcy court's statement that class 4(a) creditors accepted the plan, EFL does refer to its disappointment regarding the way its votes were counted. EFL states in its opening brief:

EFL ... voted its claim of $473,808.67 against the plan. In so doing, EFL pointed out that its claim arose from two capacities, one as a general creditor of Debtor for its breaches of the Inducement Agreement, the other as a secured creditor of Kismet partners and venturers which had a right to foreclose upon the partnership and venture units owned by them. Accordingly, EFL classified its claims as Class 4(a), 4(b) and 5. The bankruptcy court refused to allow EFL to vote its claims in all three classes, and required it

to select the class or classes in which its vote would be counted.

The Plan Proponents initially submitted a Certificate of Voting which failed to count EFL's vote in any class. Without counting EFL, the Certificate showed that 3 Kismet Venturers (i.e. Class 4(a)) had submitted ballots, two in favor, one against. Four Kismet Limited partners (i.e. Class 4(b)) had voted, three in favor, one against. Five unsecured creditors (Class 5) voted, three in favor, two against. These numbers indicate that virtually the only people to vote for the Plan were the Plan Proponents. Had EFL's votes been counted in their full amounts, a majority in dollar amounts would have voted against approval in all three classes. EFL split its notes among two Class 4 sub-classes, thereby causing the Class 4(a) vote to be negative.

The January 11, 1995 order of the bankruptcy court held that EFL is not a member of Class 4(a) or (b), but "is a creditor of the Kismet entities." Had EFL's vote been counted in Class 5, the vote of that class would have been negative.

(Doc. 3 at 6) (citations omitted). EFL does not address the voting allocations anywhere else in its memoranda.

The court finds two arguments from this excerpt in EFL's opening brief: **first,** that if the bankruptcy court had allowed EFL to count its $473,808.67 claim in each of the 4(a), 4(b) and 5 classes, those classes would have voted against the plan; and **second,** that if EFL's vote had been counted in Class 5, the vote of that class would have been negative. These "arguments" are not listed in EFL's designation of issues on appeal, (Bankr. doc. 100), and appear to be stray remarks within EFL's opening statement of the case.

The first of EFL's arguments, that if EFL had been allowed to count its $473,808.67 claim in three different classes the voting results would have been different, was addressed by the bankruptcy court at the February 23, 1994 proceeding:

THE COURT: It can't be in two places at once, Mr. Adams. That was the problem this morning.... If I understand Mr. Swartz' letter, I mean, he doesn't

have—you don't have a million dollar claim. You've got a $550,000 claim. You can't have it in three places at once.

MR. ADAMS: Well, unless the plan is drafted that way, Your Honor. And if the plan is drafted that the classes get paid as unsecured claims in 5, then our position is that we also have a classified claim in the gross amount that I recently gave the Court.

THE COURT: All right. The Court will overrule that position to the extent that they can now claim. The claim has to be allocated but it can't be allocated for more than the amount of the claim. They're entitled to only one recovery. They're either a partnership claim or an unsecured claim.

(Bankr. doc. 60 at 18–19).

EFL does not appeal this ruling and the court will not discuss it further. (See Bankr. doc. 100 at 3).

EFL's second argument is that if its claim had been counted in Class 5, that class would have voted against the plan. The certificate of voting filed February 24, 1994, however, shows that EFL did indeed vote to reject the plan as a class 5 creditor. (Bankr. doc. 53, Ballot of "ECL Limited") (EFL was formerly known as Ecoban Capital or "ECL" Limited, see Bankr. doc. 93 at 3). This is the only certificate of voting in the record before the court. In light of the record, the court rejects any argument EFL may have regarding the allocation of its Class 5 vote.

II. *Standing*

█ The court now turns to the merits of EFL's appeal. EFL asserts that the bankruptcy court erred in its January 11, 1995 ruling that EFL lacked standing to object to the confirmation of the plan. Because standing is a prudential requirement, this court's review is de novo. *In re Alpex Computer Corp.,* 71 F.3d 353, 356 (10th Cir.1995).

From the outset, it is important to note that despite the bankruptcy court's general language in its January 11 order that "EFL does not have standing to object to confirmation of the liquidating plan," EFL participated in and made objections at the February 23

confirmation hearing, and the bankruptcy court considered and ruled upon those objections. The bankruptcy court's ruling that EFL lacks standing to object is limited to those issues reserved as contested matters. Thus, the question upon appeal is not whether EFL was prevented from objecting to the proposed plan, but whether the bankruptcy court erred in not allowing EFL to object to a group of discrete issues set aside as contested matters and litigated in a forum distinct from the confirmation hearing.

The contested matters concerned the interests of Kismet's partners and venturers: that Rockwell could not assume Kismet's partnership agreements because they were not executory, that Kismet partners had not consented to Rockwell serving as the liquidator of the plan, and that the plan did not provide for the curing of defaults upon Rockwell's assumption of the Kismet partnership agreements.

The bankruptcy court made the factual finding that EFL did not hold a direct interest in either of the Kismet entities. (Bankr. doc. 93 at 9). The bankruptcy court found that, although EFL had judgments against the Kismet entities and security interests in the Kismet interests held by the investors, EFL had not foreclosed on these interests. *Id.* Thus, EFL's stake in the Kismet entities was as a secured creditor of the investors. The bankruptcy court found as a matter of fact that the contested matters EFL was objecting to did not "directly, adversely, or pecuniarily affect EFL as a creditor." (Bankr. doc. 93 at 9). EFL does not appeal the finding that its interest in Kismet was limited to being a secured creditor of Kismet investors. (Doc. 3 at 11).

After finding that the contested matters did not directly affect EFL, the bankruptcy court held as a matter of law that EFL could not assert the interests of Kismet's joint venturers and limited partners. This was based on the prudential limitation on standing which bars a litigant from asserting rights belonging to others. *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 644 (2d Cir. 1988). The bankruptcy court cited this portion of *Kane:*

> The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party, even though that other party is present in the proceeding and is capable of representing himself. Third-party standing is of special concern in the bankruptcy context where ... one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan.

(Bankr. doc. 93 at 7).

EFL appeals the bankruptcy court's ruling that EFL lacked standing to assert the rights of class 4 creditors. The court has gleaned the following arguments from EFL's memoranda: (1) that EFL meets the constitutional requirements of standing, (2) prudential limitations on standing do not apply to bankruptcy proceedings, and (3) even assuming prudential limitations apply to bankruptcy proceedings, EFL is exempted from prudential limitations in this case.

### A. *Article III*

EFL argues that it meets Article III requirements of standing because Rockwell was appointed "for the specific purpose of opposing this appellant's interests in on-going litigation. EFL, as the target of this Plan, has a personal stake in the controversy, and is currently suffering actual injury.... Since EFL is the direct target of Rockwell's on-going activities, it meets the threshold Article III requirements of suffering a distinct and palpable injury to its own interests." (Doc. 3 at 9, 10). In EFL's own words, EFL's anticipated injury from the confirmed plan stemmed from the "vehicle by which [Rockwell] could oppose EFL's efforts to obtain a judgment against Kismet in the Colorado action." (Doc. 3 at 6). Indeed, the reason EFL objected to the plan was because of its provision which allowed Rockwell to pursue causes of action on behalf of the class 4 creditors. (Doc. 3 at 6). Rockwell apparently did defend Kismet in EFL's Colorado action after the plan was confirmed.

This injury, according to EFL, meets constitutional requirements of standing.

■ Generally, in order to establish Article III standing, a litigant must allege (1) injury in fact (2) fairly traceable to the defendant's allegedly unlawful conduct (3) likely to be redressed by the requested relief. *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1485 (10th Cir.1995). One must also satisfy certain prudential conditions; for example, one must assert his or her own legal rights. *See Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1455 (10th Cir. 1994).[5]

The court doubts that representation of a party in litigation is a cognizable "injury" to the opposing party for purposes of constitutional requirements. However, because the bankruptcy court's decision was based upon prudential considerations rather than on Article III, the court will focus on that aspect of standing.

## B. *Prudential Concerns*

The court agrees with the bankruptcy court that third-party prudential concerns prevented EFL, a class 5 creditor, from challenging those portions of the reorganization plan that did not affect its direct interests and from asserting the rights of the class 4 creditors. *See Kane*, 843 F.2d at 644; *In re B. Cohen & Sons Caterers, Inc.*, 124 B.R. 642, 647 (E.D.Pa.1991); *see also In re Orlando Investors, L.P.*, 103 B.R. 593, 597 (Bankr. E.D.Pa.1989).[6]

## C. *Exemptions From Prudential Limitations*

■ EFL argues that prudential limitations do not apply in the bankruptcy context,

citing 11 U.S.C. § 1109(b) and § 1128. 11 U.S.C. § 1109 states that "a party in interest ... including a creditor ... may raise and may appear and be heard on *any issue* in a case under this chapter." (Emphasis added). U.S.C. § 1128 allows a party in interest to object to confirmation of a plan. All creditors of a debtor are parties in interest and have standing to object to a plan. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1551 n. 5 (11th Cir.1990), *cert. denied, Wallis v. Justice Oaks II, Ltd.*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). Although EFL would read § 1109(b) to allow a creditor to object to absolutely any issue under Chapter 11, the court does not interpret this section as waiving traditional prudential limitations on standing. *See Matter of James Wilson Assoc.*, 965 F.2d 160, 169 (7th Cir.1992) (opinion by J. Posner).

EFL next argues that this case presents a special situation where third-party prudential limitations should not apply. EFL cites *Warth v. Seldin*, 422 U.S. 490, 500–01, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975), for its general proposition that in some circumstances, "countervailing considerations" may outweigh prudential limitations, but does not cite a case factually analogous to the one at bar or identify the countervailing considerations which would allow it to assert the rights of Kismet investors. EFL also cites *Kane*, 843 F.2d at 643–44, for its statement that " ... where the litigant's interests are closely allied with those of the third parties, standing is permitted...." EFL asserts that its interests are closely allied with those of Kismet's investors. (Doc. 3 at 12). EFL explains, "any damages suffered by EFL at the hands of Rockwell and the Plan will

---

5. Although bankruptcy courts are not Article III courts, they enforce constitutional limitations on standing. *See infra*.

6. In *In re American Ready Mix, Inc.*, 14 F.3d 1497, 1502 (10th Cir.1994), *cert. denied, Lopez v. Behles*, — U.S. —, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994), the Tenth Circuit indicated in dicta that 11 U.S.C. § 1109(b) expands the right to be heard in a Chapter 11 proceeding to a wider class than those who qualify under the "person aggrieved" standard. The "person aggrieved" standard applies to those wanting to *appeal* a bankruptcy order, and is more exacting than the

constitutional "injury in fact" requirement of standing. *In re Alpex Computer Corp.*, 71 F.3d 353, 357 n. 6 (10th Cir.1995). It is unclear to this court what injury requirement for standing the Circuit intended for bankruptcy proceedings. However, this case is decided on the general prudential principal that one does not have standing to assert another's rights, regardless of the severity of injury required. *See Kane*, 843 F.2d at 642 (standing involves two-step inquiry; first, whether litigant has been sufficiently injured, and second, whether litigant is proper proponent of the rights he seeks to assert).

increase the debts of the partners/venturers to EFL, while, conversely, any recoveries made by EFL against the assets of Kismet will decrease those debts." (Doc. 3 at 12).

EFL did not raise this argument with the bankruptcy court, but in any event, this court is not persuaded that EFL's interests are closely allied with those of Kismet's partners and venturers. EFL has sued Kismet's partners and venturers personally as well as Kismet, the company that holds their investment. The court concludes that this is not a special case in which prudential limitations on standing should be overridden and accordingly affirms the bankruptcy court's ruling on standing in all respects.

### III. *February 23, 1994 Rulings*

EFL also appeals the rulings made when the bankruptcy court orally confirmed the proposed plan on February 23, 1994. When the bankruptcy court orally confirmed the plan, it overruled EFL's objections to the ballot procedure and Rockwell's eligibility to act as liquidator. The bankruptcy court filed its written order confirming the plan March 11, 1994. The plan proponents contend that EFL's appeal of these issues is untimely under Bankruptcy Rule 8002(a).

■ Bankruptcy Rule 8002(a) states that a notice of appeal must be filed within "10 days of the date of the entry of the judgment, order, or decree appealed from." Failure to file a timely notice of appeal within the meaning of Rule 8002 is a jurisdictional defect barring appellate review of a decision of the bankruptcy court. *In re Herwit,* 970 F.2d 709, 710 (10th Cir.1992).

EFL did not file a notice of appeal until February 10, 1995, approximately one year after the rulings made in February and March 1994 and well beyond the 10–day limit for appeals under Bankruptcy Rule 8002(a). EFL did file a timely appeal to the January 11, 1995 order regarding the contested matters, however. EFL argues that no final order existed until the bankruptcy court ruled on the contested matters, and that any previous attempt to appeal the plan's confirmation would have been dismissed as premature. (Doc. 5 at 2).

■ 28 U.S.C. § 158(a) grants this court jurisdiction to hear appeals from final orders of the bankruptcy court. In bankruptcy proceedings, an order is final when it disposes of a particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition. *In re KAR Development Assoc., L.P.,* 180 B.R. 629, 633 (D.Kan.1995); *In re American Ready Mix, Inc.,* 14 F.3d 1497, 1499 (10th Cir.1994).

■ An order confirming a proposed plan is a final, appealable order. *Matter of Wade,* 991 F.2d 402, 406 (7th Cir.1992), *cert. denied, Wade v. Shook,* — U.S. —, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993). An order confirming a plan of reorganization is as close as "the" final order as any the bankruptcy judge enters. *In re Interwest Business Equip. Inc.,* 23 F.3d 311, 315 (10th Cir.1994). Contested matters are also considered a "separate judicial unit" for purposes of determining finality. *See* I Collier on Bankruptcy ¶ 3.03 at 3–192 (15th ed. 1995). EFL's appeal of the 1994 order confirming the plan is therefore untimely, notwithstanding the contested matters set aside for separate adjudication.

EFL cites *In re Cascade,* 956 F.2d 935 (10th Cir.1992), and *In re Skinner,* 917 F.2d 444 (10th Cir.1990), in support of its argument that the plan confirmation was not a final order. These cases hold that a district court order reversing and remanding a bankruptcy court's order is not final for purposes of appeal to the Circuit, and are thus factually distinguishable. *In re Cascade Energy* hurts, rather than helps, EFL's argument. EFL quotes *In re Cascade Energy*'s footnote which provides the general principle that an order is not final unless it ends the litigation on the merits, leaving nothing for the court to do but execute the judgment, and that a district court order is not final if it contemplates significant further proceedings in the bankruptcy court. 956 F.2d at 938 n. 2. However, *In re Cascade Energy* in context reads:

> The *Eddleman* [*v. United States Department of Labor,* 923 F.2d 782 (10th Cir. 1991),*]* panel expressed concern that the circuit's long-held and traditional finality

requirements [fn. 2] in the bankruptcy context could be interpreted to foreclose bankruptcy appeals in the absence of a final order terminating the entire bankruptcy case. *Id.* at 923 F.2d at 785–87 n. 7. To the extent that this concern was not addressed fully in *In re Commercial Contractors,* 771 F.2d [1373] at 1375 [ (10th Cir.1985) ], it certainly was in *Adelman v. Fourth Nat'l Bank & Trust Co. (In re Durability, Inc.),* 893 F.2d 264, 265–66 (10th Cir.1990), which preceded *Eddleman.* In *In re Durability, Inc.,* we explained:

> The courts have recognized, however, that the appropriate 'judicial unit' for application of these finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition.

The court concludes that EFL's appeal of the orders entered in 1994 are untimely, and it is accordingly dismissed.

### Conclusion

The court AFFIRMS the bankruptcy court's January 11, 1995 ruling that EFL lacked standing to make its remaining objections to the bankruptcy plan. The court DISMISSES the remainder of EFL's appeal as being untimely.

Any motion for reconsideration of this order shall comply with D. Kan. Rule 7.3 and shall be limited to 5 pages. A response is similarly limited. No reply shall be filed.