In re HARRIS PINE MILLS, Debtor.

Bertha BAKER, Dean Forth, Louise Forth, Tommie Gibson, and Betty Gibson, Plaintiffs/Appellants,

v.

HARRIS PINE MILLS, Defendant/Appellee.

Bankruptcy No. 386–06604–P11.
Civ. No. 87–830–PA.

United States District Court, D. Oregon.

Oct. 26, 1987.

As Amended Dec. 3, 1987.

Joel S. DeVore, Mautz, Hallman & DeVore, Pendleton, Or., for plaintiffs/appellants.

David A. Foraker, Greene & Markley, Portland, Or., for defendant/appellee.

Sandra L. Wald, Ransom, Blackman & Simson, Portland, Or., for John Mitchell, Inc., trustee.

John G. Crawford, Jr., Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for Creditors' Committee.

OPINION

PANNER, Chief Judge.

Five landowners gave an interest in timber to Harris Pine Mills. Harris Pine Mills is now a debtor in bankruptcy. The landowners appeal an order of the bankruptcy court. They contend that the contracts by which they gave the debtor the right to harvest timber and conduct other timber-related activities over a period of years are nonresidential real property leases which, by not being assumed by the trustee within

sixty days after filing of a chapter 11 bankruptcy petition, must be deemed rejected under 11 U.S.C. § 365(d)(4). The bankruptcy court disagreed. I affirm.

## PROCEDURAL HISTORY

On December 5, 1986, Harris Pine Mills filed a voluntary petition under chapter 7 of the Bankruptcy Code. On December 11, 1986, the matter was converted to a chapter 11 proceeding and a trustee was appointed. On February 2, 1987, the trustee filed a motion to extend the time within which to assume or reject nonresidential real property leases. On February 4, the bankruptcy court granted an extension of time for assumption or rejection of leases to the time of approval of the disclosure statement of the appellee. On March 6, notice was given to lessors but not to appellants. On March 30, the appellee moved to assume a number of timber contracts, including those in this case. On April 27, appellants objected, claiming that the contracts are not executory timber sale contracts but are leases. On June 1, the bankruptcy court found that the contracts do not require assumption by the trustee.

## STANDARD OF REVIEW

The June 1 order of the bankruptcy court is final and appealable. This court has jurisdiction to determine appeals from orders of bankruptcy judges. 28 U.S.C. § 158(a). Review is *de novo*. 28 U.S.C. § 157(c)(1).

## FACTS

Twelve agreements providing for sale of timber and removal rights for prescribed periods are at issue between the landholders and the debtor. The contracts, which may be grouped generally as the Baker, Gibson, and Forth agreements, are similar with some variations. Typically they grant all rights to merchantable timber with the right to enter and construct logging roads. The Baker agreements date from 1950 and currently expire in 1989. The Gibson agreements date from 1947 and expire in 1997. The Forth agreements date from 1961 and expire in 2011, with a right to extend the contract to 2061 for an additional $3,500.

In 1957, the debtor was a party in the case of *Doherty v. Harris Pine Mills, Inc.*, 211 Or. 378, 315 P.2d 566 (1957), which held that when a contract provided for the sale of "merchantable" timber, it included only that which was of merchantable size as of the date of the contract. Following that decision, modifications to the agreements in this case reflect a contractual definition of merchantable timber as all timber that may become merchantable at any time during the term of the contract. In all agreements, the debtor had the right to log and re-log as often as it chose to do so.

As mentioned, the agreements had some individual variations. The Baker agreement included the provision that the Bakers waived any rights to cottonwood trees but retained rights to cut firewood from dead trees. The Gibsons retained all rights to lodgepole pine and the right to cut wood for firewood, fence posts or corral buildings. Debtor had the right to construct camps and other logging facilities, and could use the land for removal of logs from other property. The Forth agreement, which the debtor could rescind at anytime, allowed the debtor to operate a "tree farm" and to construct a mill. As with the Gibsons, the Forths retained limited rights to personal use of wood. All agreements provided for reversion back to the landowners at the conclusion of the terms.

## DISCUSSION

The bankruptcy court held in its June 1 order that the agreements "are not executory contracts or nonresidential real property leases within the meaning of 11 U.S.C. § 365 so that assumption and assignment is not necessary to transfer of rights thereunder by Trustee." Section 365(a) authorizes the trustee to assume or reject executory contracts and unexpired leases:

> Except as provided in Sections 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

However, in order to give landowners who have leased nonresidential real property protection from delays in bankruptcy, section (d)(4) makes an exception to that general rule by requiring the trustee to make the decision within sixty days whether to assume or reject a lease. That section provides:

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

The appellant landowners in this case contend that the debtor has a leasehold interest, that the trustee failed to assume or reject within sixty days, and therefore that the leases must be deemed rejected and the property must revert to them. Appellants are eager to reclaim their timber rights because they claim that the debtor paid a mere pittance for valuable rights.[1]

1. *The Nature Of The Property Interest.*

■ Congress has left to state law the determination of the nature of property rights in the assets of a bankruptcy estate. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). State law determines whether an agreement is a lease. *In re Petroleum Products,* 72 B.R. 739 (Bankr.D.Kan.1987). However, although Oregon is replete with cases concerning timber interests, no case has ever found an interest granted under a timber contract to be a lease. The cases commonly involve an agreement for the sale of timber with a requirement that the timber must be removed prior to a specified time. These have been called an estate upon a condition liable to be defeated by failure to

remove the timber, or an estate upon a condition subsequent, or a defeasible fee. Note, *Logs and Logging—Timber Deeds and Contracts—Interest of Grantee or Vendee,* 34 Or.L.Rev. 256 (1955). Sometimes timber sale agreements have been found to be a license coupled with an interest, and treated as a sale of goods under the former Uniform Sales Act. *Paullus v. Yarbrough,* 219 Or. 611, 347 P.2d 620 (1959). A contract to sell trees to be cut is a contract to sell future goods, governed by Article 2 of the Uniform Commercial Code. *Melms v. Mitchell,* 266 Or. 208, 512 P.2d 1336 (1973).

■ Appellants, however, contend that these descriptions are not dispositive because the cases did not present a question of leases, a question which must be decided on the facts of the particular agreement. The Oregon Court examined what constitutes a lease in *Sproul v. Gilbert,* 226 Or. 392, 359 P.2d 543 (1961). In that case, plaintiffs asked for declaratory relief regarding an assessment subjecting their interest in federal grazing land to an ad valorem tax. The plaintiffs there contended that they were not subject to the tax because the grant of grazing rights was a license only, not a leasehold interest. *Id.* at 402, 359 P.2d 543. The court stated:

> To create a leasehold interest the lessee must be granted the right of possession. A license is a revocable privilege to use land in the possession of another. It is commonly said that the lessee must have "exclusive possession," but this is not strictly true because all possessory interests, including even a fee simple, are subject to limitations making the possessory right something less than exclusive. Translating "exclusive possession" to mean the right to exclude others, it is apparent that as against the lessor the exclusiveness of possession may vary depending upon the restrictions imposed upon the transferee's use by the creating instrument.... [I]t is common in the creation of a leasehold interest to limit

---

1. The debtor paid the Bakers $7,010 for timber that is valued in the bankruptcy records as in excess of $800,000. The Gibson payments totalled $3,610 for an undisclosed value more than $1,000,000.

the lessee's use of the property to certain specified activities.... Contributing to the difficulty in classifying possessory and non-possessory interests in the occupation of land is the fact that possession does not have a fixed meaning. "Possession ... is a variable term which may mean different things for different purposes." 1 American Law of Property, § 3.3, p. 180.... When the property is amenable to many uses, the right to use it for a single limited purpose might not constitute possession; yet, the same right to use may well be regarded as possessory if the land in question is susceptible to only a limited number of uses. *Id.* at 403–4, 359 P.2d 543. When the agreement is neither clearly possessory or non-possessory, the court stated:

> We are required to determine whether the right to use bargained for by the transferee is substantial enough to warrant giving him the benefits (or imposing upon him the burdens) which legal tradition has attached to possessory interests. Generally the substantiality of the occupant's interest is tested by the inquiry: Does he have sufficient control over the premises to warrant the label of possession?

*Id.* at 406, 359 P.2d 543.

In *Sproul,* the court noted that the land was suitable for grazing, mining and recreation. The agreement provided for the entry of certain government officials, mineral prospectors, and hunters and fishers. The area could be reduced to provide for water supply, camping places, town sites, or other public uses. The court noted that such reservations were common in government grants of estates. More important, the court said, was the control reserved by the transferor over the use of the land. *Id.* at 410, 359 P.2d 543.

> There is ample authority for the proposition that a leasehold or other corporeal interest may be created even though the transferee has the right to use the premises only for a specified limited purpose.

*Id.* at 411, 359 P.2d 543. A lease may include the power to remove a part of the land itself. However, where the grant consists only of the privilege of removing that part of the land, the interest is not a leasehold but a profit a prendre. *Id.* at 413, 359 P.2d 543.

*Sproul* concluded that the grant of grazing rights was a leasehold interest because it was "relatively exclusive" and embraced "a substantial part" of the uses for which the land was suited. *Id.* at 405, 359 P.2d 543. The court acknowledged that "there is no exact judicial gauge which can be set against the facts to prove our conclusion with mathematical precision."

Neither party was able at oral argument to describe the nature of the land in question or other uses for which it may be suited. Nevertheless, appellants contend that examination of the agreements evidences the debtor's interest in "land *and* timber." They contend that because of the lengthy term of years granted and the rights of the debtor to log at any time the timber became merchantable, to have access to other timberlands from these properties, and to construct milling and related facilities, the debtor took a substantial part of all the practical uses to which the land may be put. They also cite a 1912 Alabama case and a law review article for the proposition that a timber interest by its nature must effectively also be a possessory interest. *Christopher v. Curtis–Attalla Lbr. Co.,* 175 Ala. 484, 57 S. 837 (1912); Luccock, *Timber Deeds—A Case for the Restatement of the Law of Property,* 20 Wash.L.Rev. 199, 200–01 (1945).

The agreements do indeed grant the debtor a comprehensive package of rights. That package, however, contains rights relating exclusively to the growing, harvesting, processing, and transportation of timber. Some timberlands in Oregon may lend themselves predominantly or perhaps exclusively to timber; others may support a wide variety of residential, agricultural, mineral, or other interests. The debtor had no right to impinge unreasonably on any other interest. The debtor had no right to exclude others from the land. The evidence in this case does not support a finding that as a matter of law or fact the

debtor's interest was sufficiently possessory to rise to the status of a leasehold.

### 2. *The Scope Of Section 365(d)(4).*

■ Although I have found that the timber agreements in this case are not leases, I note that when the question is a close one it is appropriate to construe section 365(d)(4) narrowly. Subsection 365(m) defines a lease broadly as "any ... use of real property." Thus the court in *In re Gasoil, Inc.*, 59 B.R. 804 (Bankr.N.D.Ohio 1986), held that the oil and gas agreements were leases of real property within the meaning of the section. Other courts have applied section 365 to agricultural cropland leases, *In re Strause*, 40 B.R. 110 (Bankr. W.D.Wis.1984), and mineral leases, *In re Grayhall Resources, Inc.*, 63 B.R. 382 (Bankr.D.Co.1986). Undoubtedly, under the appropriate facts, the section could also apply to timberland leases.

■ Nevertheless, section 365(d)(4) should be construed in accordance with its purpose. That purpose is not to give an advantage to lessors, who are normally entitled to full performance by the estate, over other creditors. *See In re PCH Associates*, 804 F.2d 193 (2d Cir.1986). Rather, that purpose is to protect others from the disadvantage of a commercial vacuum resulting from prolonged delay of the trustee in deciding to assume or reject the lease. The general rule in chapter 11 cases is that there is no deadline for the trustee to assume or reject leases. *In re Independence Village, Inc.*, 52 B.R. 715, 722 (Bankr.E.D. Mich.1985). Section 365(d)(4) provides an exception for leases of nonresidential real property. As explained by Sen. Orrin Hatch:

> The first problem which this bill would remedy is the long-term vacancy or partial operation of space by a bankruptcy tenant. Although in a chapter 7 case the bankruptcy code presently requires that the trustee decide whether to assume or reject an unexpired lease within 60 days after the bankruptcy petition is filed, there is no deadline for this decision in a chapter 11 case. Because of the unprecedented number of bankruptcy cases and

the consequent delays in the bankruptcy courts, tenant space has been vacated for extended periods of time before the bankruptcy court forced the trustee to decide whether to assume or reject the lease. During this time, the other tenants of the shopping center are hurt because of the reduced customer traffic in the shopping center. Tenants and landlords in other nonresidential structures have encountered similar problems.

Statement by Sen. Orrin Hatch, 130 Cong. Rec. S 8891, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Admin.News 590, 598–99. Although this provision was enacted as part of the Bankruptcy Amendments and Federal Judgeships Act of 1984, an identical provision was part of earlier bills which passed the Senate in 1982 and 1983. A 1983 Senate Committee report discussing this provision confirms that Congress's concern was focused on shopping centers or similar commercial situations. The report described as a problem the lack of any time limit under chapter 11 within which the trustee must assume or reject a lease. It states:

> Consequently, an extended period of time often passes before the trustee makes such a decision in a Chapter 11 (reorganization) case. During this dead time, the trustee often does not operate the space, or operates it at a much reduced level, thereby causing substantial economic harm to other tenants in the shopping center.

Senate Committee on the Judiciary, Omnibus Bankruptcy Improvements Act of 1983, S.Rep. No. 98–65, 98th Cong. 1st Sess. at 36 (1983). I find this legislative history persuasive. *Accord, In re Independence Village, Inc.*, 52 B.R. at 720–21; *In re Clark Resources*, 68 B.R. 358 (Bankr.N.D. Okla.1986).

In this case, appellant landowners have already been paid in full for the debtor's timber rights. There is no hint of likelihood of injury on behalf of either appellants or their neighbors from delay in the trustee's decision to assume or reject the contract. They argue that timber land management might require timely action to

prevent insect infestation or to harvest when the market is favorable. Considering the minimal bankruptcy delay in this case, I find that appellant's interests or the interests of others do not rise to the level Congress intended to protect under section 365(d)(4).

### 3. *Procedural Considerations.*

Furthermore, I find that the trustee acted reasonably and that appellants seek to rely on a highly technical argument. As noted, the debtor first filed a petition for voluntary bankruptcy under chapter 7 on December 5, 1986. On December 11, the matter was converted to a chapter 11 proceeding and the trustee was appointed. On February 2, the trustee filed a motion to extend the time within which to assume or reject nonresidential real property leases. The bankruptcy court granted that motion, allowing until the final hearing for approval of the disclosure statement. The trustee gave notice on March 6 to lessors, but did not believe the agreements in this case to be leases. They were not designated as leases and no Oregon court has heretofore held timber contracts to be leases. On March 30, the trustee moved to assume these and other timber contracts. Appellants then objected, contending that the trustee should have included these agreements in his February 2 motion for extension of time. Had the trustee done so, the contracts at issue would have been neither assumed nor rejected until the hearing for approval of the disclosure statement, an even longer period of time.

### CONCLUSION

The timber contracts are not leases and do not require assumption by the trustee within sixty days under 11 U.S.C. § 365(d)(4). The June 1, 1987, order of the bankruptcy court is affirmed.