**In re Leonard P. OSBORNE, Deborah R. Osborne, Debtors.**

**Bankruptcy No. 94–01702.**

United States Bankruptcy Court, M.D. Tennessee.

July 28, 1994.

David O. Huff, Nashville, TN, for King Frog Rentals.

Charles C. Burridge, Nashville, TN, for debtors.

the quality of debtors' plans and their post-con-

firmation performance.

## MEMORANDUM GRANTING OBJECTION TO

## AMENDMENT OF CHAPTER 13 PLAN

GEORGE C. PAINE, II, Chief Judge.

### I. INTRODUCTION:

This matter comes before the court on an objection filed by King Frog Rentals to the debtors' proposal to amend this Chapter 13 plan to add King Frog as a secured creditor. The disputed issue is whether the court should construe two rent-to-own contracts as leases or conditional sales of personal property. Applying Tennessee law, the court finds the rent-to-own contracts to be leases subject to the provisions of 11 U.S.C. § 365 of the Bankruptcy Code. The following are findings of fact and conclusions of law. Fed. R.Bankr.P. 7052.

### II. FINDINGS OF FACT:

The debtor, Leonard P. Osborne, entered into two rental-purchase transactions with King Frog Rentals at one of its locations for the purpose of acquiring consumer goods. The debtor executed two standard form "rent-to-own" contracts designated "Rental and Service Agreement with Disclosures." These contracts were the sole exhibits presented to the court.

Under these contracts, similar to others used in the rent-to-own industry, customers can rent consumer goods for a weekly or monthly term. At the end of each term, the customer can renew the contract for another term. To do so, the customer must make full payment of the rental fee at the beginning of each term. After renewing the contract with a specified number of weekly or monthly rental payments, the customer acquires title and ownership of the goods for no additional consideration.

The debtor signed the first contract on January 21, 1994 to acquire a Maytag dryer and the second on February 3, 1994 for a Maytag refrigerator. The debtor used this property for personal, household purposes.

The rental term of the January contract was eight days and expired on January 29, 1994. The February contract's rental term was nine days and expired on February 12, 1994. Both contracts required the debtor to renew the agreement for thirteen weeks. After this period, the debtor could automatically renew the agreements on a daily, weekly, or monthly basis with payment of the applicable rental rates.

Regarding the ownership of rented property, both contracts provided in line 10,

> The property at all times belongs to **KING FROG.** If you purchase the property, it becomes yours when **KING FROG** RECEIVES THE CASH.... If you rent-to-own, you WILL NOT own the property or have any ownership interest in the property until you have made the number of payments and the total of payments necessary to acquire ownership.

Under the January contract, the debtor acquired ownership of the dryer by making 52 weekly payments of $15.43, for a total of $802.36, or by making 12 monthly payments of $59.48, for a total of $713.76. The contract failed to disclose the cash price of the dryer. Under the February contract, the debtor acquired ownership of the refrigerator by making 52 weekly payments of $21.38, for a total of $1,111.76, or by making 12 monthly payments of $83.30, for a total of $999.60. The stated cash price for the refrigerator was $749.95.

The debtor could terminate either contract at any time after the first 13 weeks by not paying a renewal payment. Upon termination, the contracts required the debtor to return the property and pay all charges due through the return date.

### III. CONCLUSIONS OF LAW:

██ Judge Lundin's opinion in *Consumer Lease Network, Inc. v. Puckett (In re Puckett)*, 60 B.R. 223 (Bankr.M.D.Tenn.1986), addressed whether certain rental-purchase transactions, similar to the rent-to-own contracts at issue here, should be construed as leases or conditional sales creating a security interest. *Puckett* determined that resolution of this issue was governed by Tennessee law. *Id.* at 234. Applying a former version of Tennessee's Uniform Commercial Code, Tenn.Code Ann. § 47–1–201(37) (Michie

1979), Judge Lundin held that the rental-purchase transactions at issue were not leases but were disguised sales of personal property creating a security interest in favor of the creditor. *Puckett*, 60 B.R. at 234–35. *See also Matter of Marhoefer Packing Co., Inc.*, 674 F.2d 1139, 1142 (7th Cir.1982).

If this court applied Judge Lundin's analysis in *Puckett* to the facts of this case, the court would reach the same conclusion. The two rent-to-own contracts signed by the debtor would be construed as conditional sales creating security interests. However, in response to the 1986 *Puckett* decision, the Tennessee legislature in 1987 made several changes to the Tennessee Code.

The legislature passed the Tennessee Rental–Purchase Agreement Act, Tenn.Code Ann. § 47–18–601 to –614 (Michie 1988), which specifically exempted a "rental-purchase agreement" from being construed as a conditional sale creating a security interest. As it states:

> The term "rental-purchase agreement" shall not be construed to be, nor be governed by, any of the following:
>
> . . . .
>
> (F) A security interest as defined in § 47–1–201.

Tenn.Code Ann. § 47–18–603(7)(F) (Michie 1988).

The legislature also amended the definition of a "security interest" in Tennessee's Uniform Commercial Code as follows:

> "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. *"Security interest" shall not include a rental-purchase agreement as defined in the Tennessee Rental–Purchase Agreement Act, Chapter 18, Part 6 of this title.* (emphasis added to amended portion).

Tenn.Code Ann. § 47–1–201(37) (Michie 1992 & Supp.1993). Tennessee's Rental–Purchase Act defines a "rental-purchase agreement" as:

> an agreement for the use of personal property by a natural person primarily for personal, family, or household purposes, for an initial period of four (4) months or less (whether or not there is any obligation beyond the initial period) that is automatically renewable with each payment and that permits the consumer to become the owner of the property.

Tenn.Code Ann. § 47–18–603(7) (Michie 1988).

 Barring the future enactment of preemptive federal legislation in this area [1], resolution of the issue before the court is governed by Tennessee law. *Puckett*, 60 B.R. at 234. After examining the language of the two rent-to-own contracts executed by the debtor, the court finds each contract to be a "rental-purchase agreement" as defined under § 47–18–603(7). All the elements of § 47–18–603(7) are satisfied: (1) the agreement is for the use of personal property by a natural person for personal, household purposes, (2) the required renewal term is thirteen weeks and thus less than the maximum term of four months, (3) the agreement is automatically renewable on a daily, weekly, or monthly basis, and (4) the agreement permits the debtor to become the owner of the property.[2]

---

**1.** The Bankruptcy Amendments Act of 1994, S. 540, 103d Congr., 2nd Sess. § 316, 140 Cong. Rec. S4666, S4677 (1994) (enacted by the Senate on 4/21/94—currently before the House Judiciary Committee), expressly construes a "rent-to-own contract" as a "purchase contract." This amendment likely will undergo further drafting changes as it makes its way through the House. Roger M. Whelan, *The Progress of S. 540: A*

*Focus on the Last Minute Amendments*, Norton Bankr.L. Adviser, June 1994, at 10.

**2.** As noted previously, the January contract failed to disclose the cash price of the Maytag dryer. This is the price at which the debtor could have purchased the dryer for cash from King Frog on the date of the contract. Tenn.Code Ann. § 47–18–603(2) (Michie 1988). This omission does not

Consequently, application of Tenn.Code Ann. § 47–18–603(7)(F) and § 47–1–201(37) exempts each rent-to-own contract from being construed to be a conditional sale creating a security interest. While this result is contrary to Judge Lundin's holding in *Puckett*, it is the result mandated by Tennessee law.

The court, therefore, concludes that the two rent-to-own contracts are leases and not conditional sales. Accordingly, the court grants King Frog's objection to the debtors' proposal to amend the Chapter 13 plan by making King Frog a secured creditor. The Bankruptcy Code under 11 U.S.C. § 365 pertaining to executory contracts and unexpired leases, and not state law pertaining to security interests, should govern treatment of these contracts.

IT IS SO ORDERED.

disqualify the contract from being categorized as a "rental-purchase agreement" under Tennessee's Rental–Purchase Act. *See* Tenn.Code Ann. § 47–18–603(7) (Michie 1988). Instead, the omission violates the disclosure requirements of the Rental–Purchase Act. § 47–18–604(a)(8) requires the lessor to disclose "[a] statement of the cash price of the property." Violations of § 47–18–604 may lead to civil liability under § 47–18–611. Determination of this matter, however, is not before the court at this time.